FILED & JUDGMENT ENTERED
Steven T. Salata

August 24 2018

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*

Laura T. Beyer
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| **STEPHEN SHAWN SMITH,** | ) | Chapter 13 |
| | ) | Case No. 13-50927 |
| Debtor. | ) | |
| —————————————————— | ) | |
| | ) | |
| **MARCIA CARLSON SMITH,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding |
| v. | ) | No. 15-5034 |
| | ) | |
| **STEPHEN SHAWN SMITH,** | ) | |
| | ) | |
| Defendant. | ) | |
| —————————————————— | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING JUDGMENT TO THE PLAINTIFF

**THIS MATTER** is before the court after a trial[1] on the complaint of the Plaintiff, Marcia Carlson Smith. When the matter came before the court for trial, the only issue for the court to determine was whether the award of part of a 401(k)

_____

[1] While technically and procedurally a trial, the trial of this matter, as further explained below, was more like a summary judgment hearing in substance.

account owned by the Defendant, Stephen Shawn Smith, to the Plaintiff in a state court equitable distribution order (and referenced in the state court's separate alimony order) is nondischargeable as a domestic support obligation. After reviewing the evidence and the argument of the parties and as explained below, the court determines that the 401(k) award is a nondischargeable domestic support obligation.

### PROCEDURAL HISTORY AND FINDINGS OF FACT

1.    The Plaintiff and the Defendant married on May 3, 1986, separated on November 1, 2011, and divorced on February 7, 2013.    The Plaintiff filed a Complaint for Equitable Distribution, Alimony and Post-Separation Support in the District Court Division for Lincoln County, North Carolina ("State Court") prior to the commencement of this bankruptcy case, and the State Court entered an Order Regarding Post-Separation Support and Attorney's Fees on October 14, 2013.

2.    The Defendant filed his Chapter 13 voluntary petition and a proposed Chapter 13 plan in this court on October 30, 2013.    The court's March 19, 2014 Order Confirming Plan, among other things, requires the Defendant to cure all pre- and post-petition "Post-Separation Support" arrearages, reserves the Defendant's right to ask this court to determine whether the Plaintiff's claims against his retirement accounts are equitable distribution claims subject to discharge through his Chapter 13

plan, grants relief from the automatic stay for the Plaintiff to resume her equitable distribution action in the State Court,[2] and allows the Plaintiff to retain her right to object to the Defendant's discharge and exemptions.

3. The parties subsequently resumed their domestic litigation in the State Court. The State Court entered an Order of Equitable Distribution ("ED Order") on December 2, 2014 and an Order of Alimony ("Alimony Order") on May 4, 2015. Paragraph 5.7 of the ED Order provides that:

> The Wells Fargo 401(k) 4400 account was valued at $208,874.63 at the date of separation. Plaintiff's[3] exhibit 4A shows this value. [The Defendant] listed the asset on his bankruptcy petition on 10/30/2013 at a value of $303,000 but stated it is "not an asset of the [bankruptcy] estate." The court orders 50% of the asset's value on the date of separation be distributed to [the Plaintiff] in a Qualified Domestic Relations Order within 60 days of the execution of this order.

Paragraph 8.a of the ED Order adds that:

> The Wells Fargo 401(k) 4400 account was valued at $208,874.63 at the date of separation, as shown in Plaintiff's Exhibit 4A. As of March 31, 2014, this asset had grown to $355,855.87. Defendant admitted this account had increased in value solely as a result of the market conditions as opposed to any contributions or actions by the Defendant. The Defendant offered no evidence to refute the Plaintiffs [sic]

---

[2] The Defendant's bankruptcy filing did not stay the portion of the Plaintiff's State Court complaint seeking to establish the Defendant's domestic support obligation. See 11 U.S.C. § 362(b)(2)(A)(ii).

[3] The Plaintiff in this adversary proceeding was also the plaintiff in the State Court litigation.

contention that she is entitled to share in the post-separation growth in the asset. The court awards 50% of the asset's post-separation growth in the amount of $73,490.62 be distributed to [the Plaintiff] in a Qualified Domestic Relations Order within 60 days of the execution of this order.

4. The State Court also made findings about each party's financial situation in the ED Order. On the one hand, the Plaintiff was primarily a homemaker during the marriage. ED Order at ¶ 9.b. At the time of the parties' separation and divorce, the Plaintiff operated a child care business out of her home that had never been profitable, id., and the State Court valued the business at $0, found that the business operated at a loss for several years and had negative equity in both 2011 and 2012, and determined that the business had no significant assets, id. at ¶ 4.c. In addition, the Plaintiff's dyslexia detrimentally affected her income-producing potential, and the Plaintiff had no retirement accounts or investments on which to depend. Id. at ¶ 9. On the other hand, the State Court found that the Defendant had an electrical license, earned in the neighborhood of $94,000 annually, had worked for the same employer[4] for about 20 years and it appeared that his income would remain consistent, and had substantial retirement accounts. Id. The State Court distributed the marital estate

---

[4] The State Court's description of the Defendant's employment history is not entirely consistent between the ED Order and the Alimony Order, but the discrepancies do not significantly affect the findings and conclusions in this order.

unequally (65% to the Plaintiff and 35% to the Defendant), _id._ at ¶ 10, based on its conclusion that the Defendant's income was substantially greater than the Plaintiff's.

5.   The State Court made similar findings and conclusions in the Alimony Order.   While the Defendant was a telecommunications specialist with an electrical license and monthly income of $7320.98 supplemented by bonuses, Alimony Order at ¶ 4—5, the Plaintiff was a homemaker and the primary caretaker for the parties' two children whose childcare business had never been profitable and only generated income of $749/month for her, _id._ at ¶ 6, 16.   The Plaintiff's greatest amount of annual income during the marriage was approximately $8,000 from Walmart during one 12-month period.   _Id._ at ¶ 10. Although she had made efforts to find employment, the State Court found that the Plaintiff was not likely to earn more than the minimum wage.   _Id._ at ¶ 11.   The Plaintiff attempted to increase her income and reduce her expenses after the parties' separation, _id._ at ¶ 18, while the Defendant increased his expenses by assuming financial responsibility for his fiancé and her children, moving to a more expensive home, and purchasing a car for his fiancé, _id._ at ¶ 19, 21.   In its Conclusions of Law, the State Court determined that the Plaintiff was the dependent spouse and that the Defendant was the supporting spouse with the ability to provide support.

6.    In relation to the 401(k) account, paragraph 24 of the Alimony Order notes that:

> [T]he Court awarded a total of $177,927.94 in a Qualified Domestic Relations Order for the benefit of the Plaintiff.  As requested by the court, the Plaintiff produced an estimate of her anticipated benefit from the QDRO which is approximately $494.00 per month.

At the State Court's request, the Plaintiff also produced her estimated Social Security retirement benefit, and the State Court found that it was reasonable to require monthly alimony payments from the Defendant until the Plaintiff reached her retirement age.  Id. at 25—26.

7.    After the State Court entered the ED Order and the Alimony Order, the Plaintiff returned to this court and filed a Motion for Relief from the Automatic Stay of 11 USC Section 362 and to Amend Proof of Claim ("Stay Relief Motion") on July 2, 2015 in the Defendant's base bankruptcy case.  After the Defendant objected to the Plaintiff seeking a determination of dischargeability by motion, the Plaintiff commenced this adversary proceeding on December 18, 2015 by filing her Complaint of the Plaintiff Pursuant to 11 U.S.C. Section 541 for determination of Plaintiff's interest in property and Section 523(a)(5) Objecting to Dischargeability.  The parties asked to consult with the court in chambers prior to the March 4, 2016 continued hearing on the Stay Relief Motion.  At the March 4,

2016 continued hearing, the court announced that, based on the conversation in chambers, it anticipated that the parties would submit a consent order memorializing their mutual request to return to the State Court to get clarification about the intent of the ED Order and the Alimony Order.

8.   The court did not subsequently enter a consent order in the Defendant's base bankruptcy case, but the parties had a similar conversation with the court at the June 10, 2016 pre-trial conference in this adversary proceeding.  At the pre-trial conference, the Plaintiff's attorney said the parties were trying to figure out the "mechanics" of what would happen when the parties returned to the State Court to "clarify the intent of the distribution and the interplay between the ED award as well as the . . . alimony award," and the Defendant's attorney[5] said he assumed that "we would have some ruling from the state court judge in the form of an order where the state court judge renders a determination on that."   The court approved the submission of a consent order that would allow the parties to return to the State Court.   While not styled as a consent order, the July 11, 2016 Order subsequently entered in this adversary proceeding notes that "counsel for the Plaintiff and Defendant are in agreement that a Supplemental Order by Judge Shuford, after opportunity of counsel to present arguments before Judge

---

[5]   Three attorneys have represented the Defendant during this adversary proceeding, and different attorneys appeared for the Defendant at various hearings.

Shuford, would significantly assist . . . the Court in determining the nature of the distribution of the 401K proceeds in the [ED Order] and [Alimony Order]" and directs the parties:

> [T]o petition the Honorable Meredith A. Shuford, District Court Judge presiding over *Marcia Carlson Smith v. Stephen S. Smith*, Case No 12 CVD 0129, District Court Division of Lincoln County, North Carolina for a hearing to request a Supplemental Order regarding her previous orders regarding Equitable Distribution and Alimony to address issues of the nature of the distribution of the 401K proceeds.

9.   The parties then returned to the State Court.   On March 20, 2017, the State Court entered an Order ("Supplemental Order").   The Supplemental Order clarifies the State Court's intent relative to its award of part of the Defendant's 401(k) account to the Plaintiff.   The State Court made the following findings in decretal paragraph 1:

> a. In determining the duration of [the Defendant's] alimony obligation, the court factored in the amount of money that would be available to the [Plaintiff] on a monthly basis upon her retirement from her share of [the Defendant's] 401(k).
> b. When entering the [Alimony Order] the court took into consideration the fact that [the Plaintiff] would be receiving $494.00 per month upon retirement from [the Defendant's] 401(k) via a qualified domestic relations order.   Had the court known that said funds would not be available to [the Plaintiff] then other provisions would have been made for [the Plaintiff's] support.
> c. The [ED Order] and [the Alimony Order] were integral to each other in that the court took into consideration funds

8

available to [the Plaintiff] pursuant to
the [ED Order] ([the Defendant's] 401(k),
her social security benefits, etc.) when
determining [the Plaintiff's] need for
support—both the amount she needed and the
length of time she needed it.

d. *The 401(k) benefits which were to accrue
to [the Plaintiff] were in the nature of
support and were considered as such by the
court.*

e. In determining the amount of [the
Defendant's] alimony obligation, the court
factored in the amount of money that would
be available to [the Plaintiff] on a
monthly basis from her share of [the
Defendant's] 401(k).

f. If [the Plaintiff] does not receive her
share of [the Defendant's] 401(k) as set
forth in the [ED Order] due to the same
being discharged by the bankruptcy court,
that circumstance would be considered
material by this court and could
constitute a basis for a modification of
[the Defendant's] alimony obligation.

(emphasis added).

10.   The Defendant appealed the Supplemental Order to the
Court of Appeals of North Carolina, and the Court of Appeals
entered an unpublished opinion on February 20, 2018 ("CoA
Opinion").   Before the Court of Appeals, the Defendant argued as
follows:

[D]efendant contends the trial court abused
its discretion when it (I) determined that
the distribution scheme set forth in its
equitable distribution order was in the
nature of support; and (II) found that if
plaintiff's share of defendant's retirement
account is discharged in defendant's pending
bankruptcy proceeding, that would be
considered a material circumstance which
could constitute a basis [f]or modification
of defendant's alimony obligation.

CoA Opinion at 5.   The Court of Appeals, however, declined to address the Defendant's arguments on the merits and dismissed the appeal after determining that the Supplemental Order was interlocutory because this court had yet to decide whether the 401(k) award is a dischargeable debt.  CoA opinion at 5, 7.   The parties then returned to this court to try the dischargeability issue, and the court held a trial on May 11, 2018.   Prior to the trial, the parties stipulated to the admissibility of the four state court orders (the ED Order, the Alimony Order, the Supplemental Order, and the CoA Opinion; collectively, "State Court Orders") and agreed that the State Court Orders would be the only evidence presented at trial.   Accordingly, the court did not take any evidence (other than the State Court Orders) at the trial.

## CONCLUSIONS OF LAW

11.   After successfully completing a Chapter 13 plan, a debtor receives a discharge of most of his debts.   11 U.S.C. § 1328(a).   The Bankruptcy Code makes equitable distribution claims subject to discharge in a Chapter 13 case, id., § 523(a)(15), but does not allow a discharge of "domestic support obligations," §§ 1328(a)(2), 523(a)(5).

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under

applicable nonbankruptcy law notwithstanding any other provision of this title, that is—

(A) owed to or recoverable by—

    (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

    (ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

    (i) a separation agreement, divorce decree, or property settlement agreement;

    (ii) an order of a court of record; or

    (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

§ 101(14A). Equitable distribution claims are debts owed to a spouse, former spouse, or child of the debtor as a result of a divorce or separation that are not domestic support obligations. § 523(a)(15).

12. Accordingly, when faced with debts related to a divorce or separation in a Chapter 13 case, the court must

determine which debts are nondischargeable domestic support obligations and which debts are dischargeable equitable distribution claims. The issue is a question of federal law, Long v. West (In re Long), 794 F.2d 928, 930 (4th Cir. 1986) (citing Shaver v. Shaver, 736 F.2d 1314, 1316 (9th Cir. 1984)), and the Plaintiff bears the burden of proof as the party asserting that the debt is not dischargeable, see id. (citing FED. R. BANKR. P. 4005); Tilley v. Jessee, 789 F.2d 1074, 1077 (4th Cir. 1986) (citing In re Morris, 10 B.R. 448, 450 (Bankr. N.D. Iowa 1981)). When a bankruptcy court reviews a consensual agreement between the parties, the primary concern is the intent of the parties. Tilley, 789 F.2d at 1075 (noting "the central question of the parties' mutual intent"). When, as here, state court orders are at issue, the court must instead interpret the orders to determine the intent of the state court. In re Ongaro, 556 B.R. 474, 480 (Bankr. D.N.M. 2016); see Heckert v. Dotson (In re Heckert), 272 F.3d 253, 257 (4th Cir. 2001) ("[W]hen a prior state court judgment is the debt at issue, we are of opinion that the bankruptcy court, in an adversary proceeding to determine whether the debt is dischargeable, cannot issue its own judgment on the debt to replace the state court judgment previously obtained. All the bankruptcy court is called upon, or authorized to do, is to determine whether or not the state judgment is dischargeable."). Labels in a state court

order, like "property settlement" or "alimony," are not dispositive and a bankruptcy court must determine the true nature of the obligation. § 101(14A)(B) (defining "domestic support obligation" as a debt "in the nature of alimony, maintenance, or support . . . without regard to whether such debt is expressly so designated"); In re Leviner, No. 16-31885, 2017 WL 3986500, at *5 (Bankr. W.D.N.C. Sept. 8, 2017) (citing D'Agostino v. Genovese (In re Genovese), 96 F.3d 1438, 1996 WL 516160, at *3 (4th Cir. 1996) (unpublished table decision)); Ongaro, 556 B.R. at 480 (quoting Brown v. Brown (In re Brown), Nos. 13-13-10538, 13-1025, 2013 WL 5376541, at *5 (Bankr. D.N.M. 2013)); Mahoney v. Smith (In re Smith), 3 B.R. 224, 230 (Bankr. E.D. Va. 1980).

13. Determining the true nature of a debt related to a divorce or separation can be a difficult task and would have been a closer call in this adversary proceeding if not for the parties' agreement to seek further clarification from the State Court. For example, while labels are not determinative, the State Court awarded a portion of the Defendant's 401(k) account to the Plaintiff in the ED Order and only referenced the award in the Alimony Order, which suggests that it might not be a domestic support obligation. The parties, however, decided not to ask this court to determine the intent of the State Court based only on the ED Order and the Alimony Order but instead to

return to the State Court for further clarification, and the Supplemental Order expresses the State Court's intent related to the 401(k) account.

14.  Decretal paragraph 1.d of the Supplemental Order clearly and definitively answers the primary question before the court—the State Court's intent in awarding a portion of the Defendant's 401(k) account to the Plaintiff—in favor of the Plaintiff: "The 401(k) benefits which were to accrue to [the Plaintiff] were in the nature of support and were considered as such by the court."  The remainder of the Supplemental Order, as quoted above, further supports the conclusion that the State Court intended the 401(k) award to be a nondischargeable domestic support obligation.  Nevertheless, the court cannot completely defer to the State Court's description of its intent and must review the ED Order and the Alimony Order to make its own determination of whether the 401(k) award was in the nature of support.  Ongaro, 556 B.R. at 480 ("[T]he bankruptcy court ultimately must make its own determination about the nature of the obligation.").

15.  This court has previously used a four-factor test to determine the dischargeability of a debt related to a divorce, see Leviner, 2017 WL 3986500, at *5 (quoting In re Johnson, 397 B.R. 289, 297 (Bankr. M.D.N.C. 2008)), and application of the four-factor test in this adversary proceeding does not

contradict the State Court's description of its intent in the Supplemental Order. The four factors are:

> (1) [T]he actual substance and language of the agreement,[6] (2) the financial situation of the parties at the time of the agreement, (3) the function served by the obligation at the time of the agreement (i.e. daily necessities), and (4) whether there is any evidence of overbearing at the time of the agreement that should cause the court to question the intent of a spouse.

Johnson, 397 B.R. at 297 (citing In re Catron, 164 B.R. 912, 919 (E.D. Va. 1994)). The factors are nonexclusive and courts should consider any relevant evidence. Id. (citing In re Lepley, No. 07-20344, 2007 WL 2669128, at *4 (Bankr. W.D. Mo. Sept. 6, 2007)).

16. The second and third factors, the financial situation of the parties and the function served by the obligation, are usually the most important factors, Leviner, 2017 WL 3986500, at *6 (citing Yeates v. Yeates (In re Yeates), 807 F.2d 874, 879 (10th Cir. 1986)), and strongly support the Plaintiff's position. Based on the State Court's findings, the Defendant was clearly the breadwinner during the marriage by a significant margin. In fact, the State Court found that the Plaintiff's *annual* employment income only rivaled the Defendant's *monthly* income from employment during one 12-month period of the

---

[6] Since the court is interpreting state court orders in this adversary proceeding instead of an agreement between the parties, references to "the agreement" in the factors should be understood to refer to the ED Order and the Alimony Order.

marriage.   The Plaintiff owned and operated a daycare business
out of her home, but the State Court paints a dismal picture of
the financial status of the business, as it was never profitable
and had no value.   The Defendant also appeared to have better
prospects for the future, as his employment and significant
income appeared to be stable and he had retirement accounts on
which to rely.   The Plaintiff, by contrast, had no retirement or
investment accounts, and the State Court did not expect her to
earn more than the minimum wage.

17.   While the State Court did not explicitly announce the
function that it intended the 401(k) award to serve in either
the ED Order or the Alimony Order, it is not difficult to
conclude from context that the State Court wanted to provide
support for the Plaintiff in her retirement, and the
Supplemental Order further buttresses that conclusion.   It is
important to note that the State Court chose a qualified
domestic relations order ("QDRO") as the vehicle for the
distribution in question.   A QDRO "creates or recognizes the
existence of an alternate payee's right to, or assigns to an
alternate payee the right to, receive all or a portion of the
benefits payable with respect to a participant under a plan."
29 U.S.C. § 1056(d)(3)(B)(i).   Congress created QDROs as part of
the Retirement Equity Act of 1984 ("REA"), Terrence Cain, <u>A
Primer on the History and Proper Drafting of Qualified Domestic-</u>

Relations Orders, 28 T.M. COOLEY L. REV. 417, 453 (2011), and
"Congress passed the REA primarily to safeguard the financial
security of widows, widowers, and divorcees," id. at 452 (citing
Ablamis v. Roper, 937 F.2d 1450, 1453 (9th Cir. 1991);
Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 765 (9th Cir.
1986); Heisler v. Jeep Corp.-UAW Ret. Income Plan, 807 F.2d 505,
509 (6th Cir. 1986)).  The use of a QDRO, as opposed to cash or
another type of property division, provides some evidence that
the function of the obligation is for the support of the
Plaintiff.

18.  A close reading of the Alimony Order provides
additional evidence.  After the State Court mentions the 401(k)
award, it notes that "the Plaintiff produced an estimate of her
anticipated benefit from the QDRO which is approximately $494.00
per month" at the State Court's request.  Alimony Order at ¶ 24.
In the following paragraph, the State Court notes that it also
requested and received an estimate of the amount of the
Plaintiff's anticipated monthly Social Security retirement
benefit.  Id. at ¶ 25.  Then, the State Court says that it is
reasonable for the end of the Plaintiff's alimony to coincide
with her retirement age.  Id. at ¶ 26.  The language of
paragraphs 24 through 26 of the Alimony Order implies that the
State Court intended to replace the support provided by the
monthly alimony payments at least in part with the distributions

that the Plaintiff would receive in retirement pursuant to the QDRO.

19.  The Supplemental Order explicitly confirms the implications of the Alimony Order.  Decretal paragraphs 1.a and 1.e say that the State Court considered the monthly payments that the Plaintiff would receive from the QDRO when it determined the duration of the monthly alimony payments. Decretal paragraph 1.b says the State Court would have made other provisions for the Plaintiff's support if the payments from the Defendant's 401(k) were not available.  Decretal paragraph 1.d explicitly says the 401(k) benefits are support. Finally, the State Court says discharge of the 401(k) award would be a basis to modify the Defendant's other support payments.  Supplemental Order at decretal ¶ 1.f.  There is no question that the function of the 401(k) award is for the support of the Plaintiff.

20.  The first factor, the substance and language of the ED Order and the Alimony Order, provides some support for the Defendant's position but ultimately supports the Plaintiff.  As previously noted, the Defendant's strongest argument is that the 401(k) award is part of the ED Order and only mentioned in the Alimony Order; however, Congress provided that labels are not determinative and instructed bankruptcy courts to determine the true nature of domestic obligations.  As discussed above in

reference to the function of the obligation, the Alimony Order
implies that the 401(k) award was intended as support despite
its inclusion in the ED Order, and the Supplemental Order makes
the implication explicit.   The Defendant also correctly points
out that the 401(k) award does not terminate if the Plaintiff
remarries or dies and that there is a presumption that support
obligations will terminate in those situations, Leviner, 2017 WL
3986500, at *6 ("An obligation that terminates on the death or
remarriage of the obligee is likely to have been intended for
support." (citing Fitzgerald v. Fitzgerald (In re Fitzgerald), 9
F.3d 517, 521 (6th Cir. 1993); Morel v. Morel (In re Morel), 983
F.2d 104, 105 (8th Cir. 1992); Sylvester v. Sylvester, 865 F.2d
1164, 1166 (10th Cir. 1989))).   The Defendant, however, may
misunderstand the nature of the obligation.   Since the State
Court ordered the Defendant to have a QDRO entered within 60
days (of December 2, 2014), there would be nothing to terminate
if the Plaintiff subsequently remarried or died.   Moreover,
there is also no provision in the Alimony Order for the monthly
cash payments to stop if the Plaintiff remarries or dies, and
the Defendant does not argue that the cash payments are not in
the nature of support.   It appears that the State Court made an
unconventional decision that the support payments should not
stop regardless of subsequent events in the Plaintiff's life,
and it is not this court's role to weigh in on the wisdom of

that decision.  This court's only job is to determine the State Court's intent, and the structure and language of the ED Order and the Alimony Order suggest that the 401(k) award was in the nature of support.

21.  The fourth factor, evidence of overbearing, is probably irrelevant to situations involving court orders instead of voluntary agreements, as the state court would likely be able to prevent any overbearing between the parties.  Nevertheless, the court finds that this factor is not relevant to this adversary proceeding, as both parties have been represented by independent counsel both in the state court proceedings and in this court, and the court does not see any evidence of overbearing.  Therefore, there are three factors that support the Plaintiff's position that the 401(k) award is a nondischargeable domestic support obligation, one factor that is not relevant, and no factors suggesting that the 401(k) award was simply a division of marital property.  A review of the factors (in conjunction with a review of the Supplemental Order that, again, was only entered because both parties wanted to get further clarification from the State Court) leads to the inescapable conclusion that the 401(k) award is not dischargeable because it is intended to provide support to the Plaintiff.

22.  The Defendant's arguments to the contrary are not

convincing, and, even worse, the Defendant has taken inconsistent positions in various court proceedings. In his Statement of Position of Stephen Shawn Smith ("Defendant's Brief"), the Defendant ignores the express direction from the State Court in the Supplemental Order as well as the language of the ED Order and the Alimony Order discussed above to conclusively state that the 401(k) award is "clearly a division of PROPERTY" that this court cannot disturb. Defendant's Brief at ¶ 5. The Defendant does acknowledge the portion of the Supplemental Order where the State Court notes that it might adjust the Defendant's support were this court to determine that the 401(k) award is dischargeable, id. at ¶ 7, and the Defendant urges the court to follow that path. The Defendant took a different position in the North Carolina Court of Appeals, where he argued that the State Court abused its discretion by determining that the 401(k) award was support and by anticipating a future modification of the Defendant's alimony if the 401(k) award was discharged. While the Defendant's inconsistencies may not rise to the level of prompting judicial and/or equitable estoppel, they give the impression of a party willing to adopt any argument in his vain search to convince a court to support his position and undermine the efficacy of his contentions. The court does agree with the Defendant, however, that it should defer to state courts in regard to domestic

issues.  Id. at ¶ 10; see Robbins v. Robbins (In re Robbins),

964 F.2d 342, 345 (4th Cir. 1992) ("[T]he bankruptcy court

correctly placed equitable distribution disputes in the category

of cases in which state courts have a special expertise and for

which federal courts owe significant deference.").  While the

Defendant's concept of deference would have this court conclude

that the State Court is incapable of describing its own intent,

the court believes that the best way to exercise deference is to

enforce the State Court's determination that the 401(k) award is

support and not a division of property.

### CONCLUSION

While this court does not typically send domestic litigants

back to a state court for the state court to explain its intent,

it is the procedure that the parties asked this court to allow

and consensually agreed to in this adversary proceeding, and

there can be no doubt that the State Court answered the question

in favor of the Plaintiff.  This court sees no reason to

question the State Court's determination after examining the

State Court Orders under the applicable standards.  Accordingly,

the court hereby **FINDS AND CONCLUDES** that the State Court's

award of $177,927.94[7] of the Defendant's 401(k) account to the

---

[7] The Plaintiff asked this court to increase the amount of the 401(k) award to account for the passage of time and the increased value of the Defendant's 401(k) account.  The court believes that the questions of whether to increase the amount of the 401(k) award and the amount of the increase are better addressed to the State Court, and this order is without prejudice to the

Plaintiff is a nondischargeable domestic support obligation, and $177,927.94 of the Defendant's 401(k) account shall be distributed to the Plaintiff within 60 days of the entry of this order via a Qualified Domestic Relations Order consistent with the State Court Orders and the State Court's procedures.   The court hereby **SETS A STATUS HEARING** at 9:30 a.m. on November 7, 2018.   The court will enter a separate judgment consistent with this order.

     **SO ORDERED.**

This Order has been signed                          United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.

---

Plaintiff's right to seek additional relief related to the 401(k) account in the State Court.